## PEOPLE v SPINKS

Docket No. 150024. Submitted February 8, 1994, at Detroit. Decided
August 16, 1994, at 9:10 ᴀ.ᴍ.

Charles Spinks was convicted by a jury in the Detroit Recorder's
Court, George W. Crockett, III, J., of second-degree murder and
possession of a firearm during the commission of a felony. He
was sentenced to eight to twenty years for the murder convic-
tion and two years for the felony-firearm conviction. The defen-
dant appealed.

The Court of Appeals *held:*

1. The trial court erred in admitting the confession of the
defendant's accomplice as evidence in the defendant's trial.
Those portions of the statement that implicated the defendant
were inadmissible against the defendant. The statement did not
contain adequate indicia of reliability and violated the defen-
dant's constitutional right of confrontation. The error was
harmless beyond a reasonable doubt, however, because the
defendant's confession was sufficient to prove beyond a reason-
able doubt the defendant's commission of the crimes.

2. The trial court did not err in instructing the jury as
requested by the defendant.

3. The defendant's confession was voluntary and was not the
fruit of his arrest, which he alleged was illegal. The defendant's
confession was admitted properly.

Affirmed.

1. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Hᴇᴀʀsᴀʏ Eᴠɪᴅᴇɴᴄᴇ — Cᴏɴғᴇssɪᴏɴs ᴏғ Aᴄᴄᴏᴍ-
ᴘʟɪᴄᴇs.

The portions of a nontestifying accomplice's hearsay statement

Rᴇғᴇʀᴇɴᴄᴇs

Am Jur 2d, Criminal Law §§ 721, 729, 731, 957; Evidence §§ 589,
633, 785, 789-791.

Admissibility, as against interest, in criminal case of declaration of
commission of criminal act. 92 ALR3d 1164.

Federal constitutional right to confront witnesses—Supreme Court
cases. 98 L Ed 2d 1115.

When is evidence which is obtained after unconstitutional search or
seizure sufficiently remote from such search or seizure so as not
to be tainted by, and not to be inadmissible as fruit of, such
search or seizure—Supreme Court cases. 109 L Ed 2d 787.

that are against the declarant's own penal interest are admissible in a defendant's trial; however, those portions that inculpate the defendant are admissible only if the circumstances under which the statement was made vouch for its reliability; a statement may be found to be unreliable where it is made to the police while the declarant is under custodial interrogation and is motivated by a desire to win favorable treatment (MRE 804[b][3]).

2. CRIMINAL LAW — HEARSAY EVIDENCE — RIGHT OF CONFRONTATION — CONFESSIONS OF ACCOMPLICES.

Where there is adequate indicia of reliability, the admission in a defendant's trial of a nontestifying accomplice's hearsay statement does not violate the defendant's constitutional right of confrontation; a statement generally will be found to be reliable where the statement was voluntarily given, made contemporaneously with the events referenced, made to family, friends, colleagues, or confederates, and uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener; a statement generally will be unreliable where it was made to law enforcement officers or at the prompting or inquiry of the listener, it minimizes the role or responsibility of the declarant or shifts blame to the accomplices, it was made to avenge the declarant or to curry favor, and the declarant had a motive to lie or distort the truth (US Const, Am VI; Const 1963, art 1, § 20).

3. CRIMINAL LAW — EVIDENCE — APPEAL — HARMLESS ERROR.

A violation of the Confrontation Clause or the erroneous admission of evidence may be found to be harmless error where the appellate court can confidently conclude, beyond any reasonable doubt, that the error did not affect the jury's verdict; an error is not harmless if an average jury would have found the prosecution's case significantly less persuasive had the error not occurred (US Const, Am VI; Const 1963, art 1, § 20).

4. CRIMINAL LAW — EVIDENCE — UNLAWFUL DETENTION.

Where an unlawful detention has been employed as a tool to directly procure a confession from a detainee, the resulting evidence generally should be excluded as the fruit of the poisonous tree; however, suppression is not required where there is no causal nexus between the illegal arrest and the confession; a causal nexus is determined by examining the time elapsed between the illegal arrest and the confession, the flagrancy of official misconduct, any intervening circumstances, and any circumstances that occurred after the arrest.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Janet A. Napp,* Assistant Prosecuting Attorney, for the people.

*Mark R. Hall,* for the defendant.

Before: GRIBBS, P.J., and HOOD and H. E. BROWN,* JJ.

PER CURIAM. Defendant was convicted by a jury of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to a term of eight to twenty years for the murder conviction plus the mandatory two years for the felony-firearm conviction. He appeals as of right. We affirm.

Defendant originally was charged with first-degree murder, MCL 750.316; MSA 28.548, conspiracy to commit first-degree murder, MCL 750.157a MSA 28.354(1), and possession of a firearm during the commission of a felony. Following a preliminary examination, the conspiracy charge was dismissed because of insufficient evidence. Defendant then successfully moved to suppress statements that he and his codefendant made to the police, and the remaining charges were dismissed.

The prosecutor appealed, and this Court reversed, holding that both statements were admissible against defendant. *People v Spinks,* 184 Mich App 559; 458 NW2d 899 (1990). Defendant's application for leave to appeal to the Supreme Court was denied. 437 Mich 875 (1990). Defendant was

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

then tried and convicted. We note that he was tried alone. His original codefendant had already been convicted.

Defendant first argues that the accomplice's statement was improperly admitted against him. We agree.

We note, first, that this issue was decided in defendant's prior appeal and that consideration is therefore technically precluded by the law of the case doctrine. *CAF Investment Co v Saginaw Twp,* 410 Mich 428, 454; 302 NW2d 164 (1981). However, the case upon which this Court relied during defendant's first appeal was reversed by the Supreme Court in *People v Watkins,* 438 Mich 627; 475 NW2d 727 (1991). Because defendant's constitutional rights are at risk, we choose to address this issue on the merits. *Locricchio v Evening News Ass'n,* 438 Mich 84, 109-110; 476 NW2d 112 (1991); *Bennett v Bennett,* 197 Mich App 497, 500; 496 NW2d 353 (1992).

For a nontestifying codefendant's statement to be admissible against a defendant, it must be admissible under the Michigan Rules of Evidence and it must not violate the defendant's constitutional right to confront his accuser. *People v Poole,* 444 Mich 151, 157; 506 NW2d 505 (1993). We first acknowledge that the statement is indeed an unsworn out-of-court statement offered for its truth and, therefore, it is clearly hearsay. See *id.* at 158-159. Under MRE 804(b)(3), those portions that are against the declarant's own penal interest are admissible. *Poole, supra* at 159. However, those portions that inculpate defendant are admissible only if the circumstances under which the statement was made vouch for its reliability. *Id.* at 161-162. A narrative description freely made to an acquaintance while not in custody probably would be admissible. *Id.* at 162. However, statements

made to the police while under custodial interrogation may be motivated by a desire to win favorable treatment and, therefore, would not be admissible. *Id.* at 158, 162; see also *Watkins, supra* at 646-650.

In this case, the statement made by defendant's accomplice inculpated the declarant and several other people, including defendant. Defendant's role in the crime was to purchase the murder weapon. He was not alleged to have been present during the shooting. The victim was the declarant's brother, and the killing was the result of a dispute involving drugs.

After carefully reviewing the accomplice's statement, we conclude that those portions implicating defendant were inadmissible against him. We note that, overall, the statement tended to shift blame by inculpating others more than it inculpated the declarant, although defendant's role was described as being relatively minor. Also, the statement was made in response to custodial interrogation and, therefore, may have been motivated by a desire to curry favor with the authorities. The trial court abused its discretion in admitting it.

Whether the admission of the nontestifying accomplice's statement also violated defendant's constitutional right of confrontation, US Const, Am VI, and Const 1963, art 1, § 20, depends on whether it bears "adequate indicia of reliability." *Poole, supra* at 162. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* However, reliability may not be inferred from the blanket categorization of a statement as being against penal interest. *Watkins, supra* at 653-655. In fact, accusatory statements in a codefendant's custodial confession are "properly presumed at the outset to be *uniquely* and *especially* suspect and unreliable, much *more* so than typical, run-of-the-

mill hearsay." *Id.* at 656 (emphasis in original). We note that the lack of indicia of trustworthiness may not be overcome with corroborating evidence. *Id.* at 665. In *Poole,* on the other hand, no violation of the Confrontation Clause was found where the statement was: "(1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates —that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener." *Poole, supra* at 165.

Here, there are no indicia of reliability. To the contrary, the accomplice's statement in this case presents all the factors that favor a finding of unreliability because it: "(1) was made to law enforcement officers or at the prompting or inquiry of the listener, (2) minimizes the role or responsibility of the declarant or shifts blame to the accomplice[s], (3) was made to avenge the declarant or to curry favor, and (4) . . . the declarant had a motive to lie or distort the truth." *Poole, supra* at 165. Thus, admitting the accomplice's statement in this case also violated defendant's right of confrontation.

However, a violation of the Confrontation Clause —like the erroneous admission of evidence—may be harmless if the appellate court can "confidently conclude, beyond any reasonable doubt, that the error did not affect the jury's verdict." *Watkins, supra* at 667; see also *People v Banks,* 438 Mich 408, 427; 475 NW2d 769 (1991). An error is not harmless if "the 'minds of an average jury' would have found the prosecution's case 'significantly less persuasive' had the statements of the [accomplice] been excluded." *Id.* at 430, quoting *Schneble v Florida,* 405 US 427, 432; 92 S Ct 1056; 31 L Ed 2d

340 (1972). Thus, even where "the properly admitted evidence . . . was substantial" an error is not harmless if the improperly admitted statements "provided a uniquely devastating and detailed account of the alleged crime. Any doubt on this score is dispelled by the fact that the jury specifically asked and was permitted to reexamine copies of the two confessions during deliberation. It would be virtually impossible to find the error harmless in light of such a direct indication that the jury was specifically concerned with the erroneously admitted evidence." *Watkins, supra* at 667.

In this case, the people introduced a receipt from a gun shop showing that defendant purchased the murder weapon. There was also forensic evidence to the same effect. Further, defendant's confession was introduced—which he challenges on appeal—in which he admitted not only purchasing the murder weapon but also knowing what his accomplice was considering doing with it.

We acknowledge that the jury deliberated for two days before reaching a verdict and that they twice asked for and examined the accomplice's inadmissible statement. However, defendant's own confession was just as detailed and devastating as his accomplice's statement and it was, by itself, sufficient to prove beyond a reasonable doubt that defendant aided and abetted the commission of second-degree murder when he purchased the murder weapon with knowledge that the principal intended to use it to kill the victim. See *People v Genoa,* 188 Mich App 461, 463; 470 NW2d 447 (1991); see also MCL 767.39; MSA 28.979. Thus, assuming for a moment that defendant's own confession was properly admitted—which we will decide later—we find that the error nevertheless was harmless beyond a reasonable doubt.

Defendant next argues that the trial court erred

in allowing defendant's accomplice, who had already been convicted, to refuse to testify after the accomplice asserted his Fifth Amendment privilege regarding self-incrimination. Defendant further argues that the trial court erred in allowing the prosecutor to refuse to request a court order granting immunity to the accomplice and thereby force the accomplice to testify. These errors, defendant alleges, violated his right of confrontation by making the accomplice unavailable for cross-examination and allowing his statement to be introduced.

Because we have already concluded that defendant's right of confrontation was violated by introducing his accomplice's statement, we do not address the merits of these arguments. We note, however, that the violation of defendant's right of confrontation was, as discussed above, harmless beyond a reasonable doubt.

Next, defendant complains that the trial court improperly instructed the jury regarding the elements of aiding and abetting. We disagree.

Defendant opposed the prosecutor's request to instruct the jury using the first edition of the criminal jury instructions. Counsel did this even after a discussion was held on the record regarding a possible error in the second edition's version of the aiding and abetting instruction, CJI2d 8.1. The jury was given the instruction defendant insisted on. He may not now complain. *People v Buck,* 197 Mich App 404, 423; 496 NW2d 321 (1992), modified on other grounds sub nom *People v Holcomb,* 444 Mich 853; 508 NW2d 502 (1993). As discussed above, the error—if any—was harmless because the evidence properly admitted at trial was sufficient to find beyond a reasonable doubt all the statutory elements of aiding and abetting.

Lastly, defendant challenges the admissibility of

his confession on the ground that it was the fruit of an illegal arrest without a warrant. We disagree.

Generally, if an "unlawful detention has been employed as a tool to directly procure any type of evidence from a detainee," the resulting evidence should be excluded as the fruit of the poisonous tree. *People v Mallory,* 421 Mich 229, 240-241, 243, n 8; 365 NW2d 673 (1984). However, a defendant's illegal arrest does not require suppression of his confession unless there is a causal nexus between the illegal arrest and the confession. *Id.* at 243, n 8. This is determined by examining: (1) the time elapsed between the illegal arrest and the confession, (2) the flagrancy of official misconduct, (3) any intervening circumstances, and (4) any circumstances antecedent to the arrest. *Id.* see also *People v Malach,* 202 Mich App 266, 274; 507 NW2d 834 (1993).

According to the evidence presented at the hearing regarding defendant's motion to suppress, defendant was arrested at about midnight and was not interrogated until about noon the next morning. The parties stipulated that the delay was the result of the arresting officers' busy schedule. The arresting officers testified that defendant's brother allowed them inside the house after they knocked and identified themselves. The officers entered the house with their weapons drawn. However, none of the witnesses testified that they saw the weapons before opening the door.

During defendant's prior appeal, this Court overturned the trial court's decision to suppress defendant's confession on the basis of prearraignment delay. *Spinks, supra* at 561-565. The panel examined the totality of the circumstances and found that the confession was voluntary. *Id.* at 564-565. The panel did not consider defendant's argument

that the confession should be suppressed as the fruit of an illegal arrest.

We acknowledge that the trial court did not rule on this issue below. However, we find—as did the prior panel—that the factual record below is suffi-cient for us to decide this issue as a matter of law. See *id.*

Our review of the record discloses only a moder-ate preinterrogation delay of about twelve hours. The officers' conduct was not flagrant; in fact, defendant's brother may have consented to their entry. See MCL 764.15; MSA 28.874; see also *City of Troy v Ohlinger,* 438 Mich 477, 485-486; 475 NW2d 54 (1991). There are no antecedent or inter-vening circumstances that are relevant to the causal nexus between the alleged illegal arrest and defendant's confession. Thus, in light of all the circumstances, including those discussed in this Court's prior opinion, we find that defendant's confession was made voluntarily and was not the fruit of the alleged illegal arrest. Therefore, it was admitted properly into evidence.

Affirmed.

H. E. BROWN, J., concurred in the result only.